UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CUSTOM LED, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>EBAY, INC, et al.,<br><br>　　　　Defendants. | Case No. 12-cv-00350-JST<br><br>**ORDER DENYING JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND VACATING HEARING**<br><br>Re: ECF No. 72 |

In this putative class action for breach of contract and related claims, the parties move jointly for preliminary approval of a proposed settlement. As the motion is suitable for determination without oral argument, the hearing scheduled for August 29, 2013, is VACATED. See Civil L.R. 7-1(b). For the reasons set forth below, the motion is DENIED WITHOUT PREJUDICE.

**I.　BACKGROUND**

　**A.　The Parties and Claims**

Custom LED filed this class action on January 23, 2012, asserting claims against eBay, Inc. ("eBay"), eBay Europe, and eBay International AG, for alleged breach of contract and fraud in connection with eBay's "Featured Plus!" listings.

Custom LED alleges that eBay is an "integrated" online marketplace that utilizes various "entry points," including www.ebay.com ("Core eBay"), www.motors.ebay.com ("eBay Motors") and stores.ebay.com ("eBay Stores"). Compl. ¶ 6. All of these websites are interconnected such that a search for an item listed on eBay Motors can be initiated from any of eBay's sites, including Core eBay and eBay Stores. Id. Because of the common web design, format, and interconnectedness of the eBay sites, buyers cannot readily discern whether they are on Core eBay, eBay Motors, or eBay Stores when they conduct searches for products. Id.

Before listing items for sale, sellers must agree to eBay's User Agreement. Id. ¶ 7. Sellers also must agree to eBay's fees schedules. Id. ¶ 8. eBay generally charges two types of fees to sellers: (1) an "insertion fee," which a seller pays when listing an item and generally does not exceed $1; and (2) a "final value fee," which the seller pays if the item is sold. Mot. at 2. eBay offers optional listing upgrades to sellers, which increase the listings' visibility and likelihood that items will be sold. Compl. ¶ 12. One such upgrade is Featured Plus!, which is included in the eBay Motors fees schedule and costs as much as $39.95 per listing. Id. ¶ 10. The eBay Motors fees schedule describes Featured Plus! as:

> **Featured Plus!**: Your item appears in the **Featured Items** section at the top of the search results list page.

Id. & Ex. E (emphasis in original).

Custom LED alleges that this language constitutes a promise to display any listings for which sellers have paid "Features Plus!" fees in a "Featured Items section" at the top of any search list, regardless of the eBay site on which those searches were conducted and the way in which the search results were sorted. Id. ¶ 14. Custom LED further alleges that eBay did not abide by this promise, because the listings for which sellers paid Featured Plus! fees were not displayed in this manner. Id. Instead, a Features Plus! listing appeared at the top of the search results list only when three conditions were met: (1) the search was conducted on eBay Motors; (2) the search was limited to eBay Motors listings; and (3) the search results were sorted by "Best Match." Id. ¶ 14.

Based on these allegations, Custom LED has asserted the following claims on behalf of a putative class: breach of contract; unfair competition in violation of California's Unfair Competition Law ("UCL"); violations of California's False Advertising Law ("FAL"); fraud and deceit; unjust enrichment; and declaratory judgment.

**B.     Procedural History**

On May 24, 2012, the Court granted in part and denied in part eBay's motion to dismiss. ECF No. 41. The Court dismissed with prejudice Custom LED's claims for fraud and deceit, unjust enrichment, and declaratory judgment. Additionally, the Court dismissed with prejudice Custom LED's claims against eBay Europe and eBay International without leave to amend on the

ground that no contract exists between Custom LED and these entities.

Accordingly, the only claims currently at issue are those for breach of contract, unfair competition in violation of the UCL, and false advertising in violation of the FAL.

### C.      Settlement Agreement

After engaging in "extensive research, investigation, discovery[,] and motion practice," the parties participated in a mediation conducted by the Honorable Ellen Sickles James on June 6, 2013, during which they reached a settlement. Mot. at 5; Verges Decl. ¶ 21.

eBay has agreed to pay $4,750,000 to settle the claims at issue ("Gross Settlement Fund"). Mot., Ex. 1 ¶ 2.1. The following amounts will be subtracted from the Gross Settlement Fund: (1) $7,500 for Custom LED's "enhancement award;" (2) attorney's fees of "up to 25%" of the Gross Settlement Fund, plus costs and expenses, which counsel for Custom LED estimates to be $1.1875 million; and (3) the costs of administering the settlement, which are not itemized in the proposed settlement but counsel for Custom LED estimates to be "approximately $300,000." Id.; Verges Decl. ¶ 18.

After subtracting these amounts, any remaining funds ("Net Settlement Fund"), which the Court calculates to be approximately $3,355,000, will be distributed to the class, which Custom LED defines as:[1]

> [A]ll natural persons and entities who are United States residents and who, from January 23, 2008 to the present listed items for sale on eBay's websites with the Featured Plus! upgrade, and incurred Featured Plus! Fees in connection with such listings.[2]

Mot., Ex. 1 ¶ 1.4.

Before distribution, the Net Settlement Fund first will be bifurcated by time period. One-third of the fund will be allocated to the time period ranging from January 23, 2008, to September 28, 2009, and the remaining two-thirds will be allocated to the period ranging from September 29, 2009, to February 4, 2013. Mot. at 7; Mot., Ex. 1 ¶ 2.1(d). Each class member will receive an

---

[1] The parties do not provide an estimate of the Net Settlement Fund.
[2] The location of the putative class members will be determined based on whether the primary contact information they gave to eBay is "an address in the United States." Mot. at 5.

3

1  amount based on the percentage of the disputed fees that she paid during each of the time periods
2  relative to the total fees that all class members paid during each of the time periods. Id. The
3  parties provide the following example to illustrate their distribution scheme: if all class members
4  incurred $10,000 in disputed fees in period 1 and $10,000 in period 2, and a class member
5  incurred $100 in disputed fees in period 1 and $200 in period 2, then that class member would
6  receive 1% of the Net Settlement Fund allocated to period 1 and 2% of the Net Settlement Fund
7  allocated to period 2. Id. The total distribution to this class member would equal the sum of these
8  two amounts.

In their motion, the parties provide some information, albeit with little background or explanation, pertaining to the disputed fees:

> There are [Redacted] unique user IDs in the Settlement Class (a person could have more than one user ID, so there may be fewer class members). There were [Redacted] unique listing IDs during the Class Period. The average fee at issue was $17.11 per unique listing ID (re-listed items can have the same listing ID, so the average fee for each original listing may have been smaller). The average paid per User ID during the Settlement Class Period was [Redacted]; of that, the average paid for items that did not sell was [Redacted]. Most of the Featured Plus! fees were paid prior to September 29, 2009, and of those fees, over [Redacted] of the listings results [sic] in at least one sale. Only 13% of the Featured Plus! fees were paid for items (1) that did not sell; and (2) were listed after September 29, 2009.

Mot. at 5.

Counsel for Custom LED estimates that "the average net recovery" will be $4.71 for the first period and $46 for the second period, but he does not explain what the term "net recovery" means or how it was calculated. Verges Decl. ¶ 18. The parties also do not state the total fees paid in each period or provide an estimate of the number of individuals who fall within the class definition.

The default method for distributing funds to class members with active eBay accounts will be to give them account credits. Credits will be reduced by any "outstanding amounts due to eBay" and any "Disputed Fees incurred by Class Members for which Class Members already received a refund, as determined by eBay's records." Mot., Ex. 1 ¶ 2.1(d). Class members who

4

1  receive credits "can apply for a refund" in accordance with eBay's refund policy.  Id.

2  Additionally, any class member "with an Active eBay Account" who does not want to receive a

3  credit may choose to receive a check instead by providing notice to the claims administrator no

4  later than the deadline for filing objections.  Id. ¶ 2.1(e).  The amount of the check, which must

5  exceed $1, will be determined in accordance with the same formula used to calculate credits,

6  except that any check amount will not be reduced based on "any amounts due to eBay."  Id.

7      The default method for distributing funds to class members with closed eBay accounts will

8  be to send them checks to the name and address in eBay's records or to any other name or address

9  that the class members provide to the claims administrator.  Id. ¶ 2.1(f).

10      The amounts owed to the class members will be calculated by the claims administrator

11  based on data provided by eBay.  Mot. at 7.  Class members will not have the right to contest the

12  accuracy of the calculations performed by the claims administrator.  Mot., Ex. 1 ¶ 2.1(g).

13      Any funds remaining in the Net Settlement fund after distribution will be given to the

14  National Cyber-Forensics & Training Alliance ("NCFTA"), a nonprofit organization that protects

15  consumers against cyber crime and fraud; and the National Consumer Law Center ("NCLC"), a

16  nonprofit organization that focuses on low-income consumer law issues.  Id. ¶ 2.1(h).

17      The parties agree that the claims administrator will provide notice to the putative class

18  members in the following four ways: (1) by setting up a website ("the notice website") within 30

19  days after the preliminary approval order is issued, which will contain the proposed class notice;

20  (2) by email to the email address that eBay has for each class member; the email will contain the

21  domain name of the notice website, the mailing address of the claims administrator, and the

22  proposed class notice; (3) by first-class mail to the mailing address currently in eBay's records

23  with respect to class members whose email notice is returned as undeliverable; and (4) by press

24  release, which will contain a link to the notice website.  Id. ¶ 3.3.

25      As part of the settlement, Custom LED and any putative class members who do not opt out

26  of the action would release all claims, "known or unknown,"

27

28  > *arising out of or relating in any way to Featured Plus!* including but
> not limited to any and all claims for breach of contract, breach of the

5

> implied covenant of good faith and fair dealing, fraud, unjust enrichment, negligence, or violations of California's Unfair Competition Law, California's False Advertising Law, the California Consumer Legal Remedies Act or any other claims that could potentially have been alleged arising from the alleged facts in the Action relating to Featured Plus!

Id. ¶ 4.2 (emphasis added).

eBay retains the right to terminate the settlement agreement within seven days of the deadline for filing a motion for final approval of the settlement if more than 100 class members opt out of the action. Id. ¶ 3.7(c).

### D. Jurisdiction

The Court has jurisdiction over this action under 28 U.S.C. § 1332(d).

## II. LEGAL STANDARD

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). The settlement of a certified class action must be fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). But, where the "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). In these situations, settlement approval "requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir. 2012) (citation and internal quotation marks omitted).

## III. DISCUSSION

### A. Class Certification

A district court may certify a class action under Federal Rule of Civil Procedure 23 if the parties seeking certification satisfy the four requirements identified in Rule 23(a) as well as one of the three subdivisions of Rule 23(b). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997).

When determining whether to certify a class for settlement purposes, a court must pay "heightened" attention to the requirements of Rule 23. Id. at 620. Indeed, "[s]uch attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Id.

6

1  (citations omitted).

2  As discussed below, the parties show that Rule 23's requirements for certification of the
3  putative class for settlement purposes are met.

### 1. Rule 23(a)

Rule 23(a) contains four threshold requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Id. at 613.

#### a. Numerosity

The numerosity requirement is satisfied when a plaintiff shows that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

Here, the parties assert that "the Class consists of holders of approximately 250,000 unique eBay user IDs." Mot. at 12. The parties admit that the number of persons who fall within the scope of the class definition may not be equivalent to the number of User IDs they have provided. Nevertheless, the size of the putative class appears to be very large, such that joinder of all class members would be impracticable. Accordingly, this requirement is met.

#### b. Commonality

The commonality requirement is satisfied when a plaintiff shows that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality exists when the plaintiff's claims "depend upon a common contention" of "a nature that it is capable of classwide resolution," such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 131 S. Ct. at 2551.

Here, Custom LED argues that commonality exists because the putative class members' claims arise out of "various web pages that describe the User Agreement, the Featured Plus! fees, the functionality of Featured Plus!, and the operation of the search feature, among other things." Mot. at 13. The Court concludes that the existence of these common questions, whose answers will resolve issues central to the validity of Custom LED's claims, is sufficient to find commonality.

//

//

### c. Typicality

Typicality exists if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal quotation marks omitted).

Here, Custom LED argues that typicality is satisfied because it and the putative class members were injured by the same course of conduct, namely eBay's search algorithm, which uniformly failed to display the Featured Plus! listings as advertised. Mot. at 14. The Court concludes that this is sufficient to find typicality.

### d. Adequacy of Representation

A plaintiff may bring claims on behalf of a class only if she "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998) (citation omitted).

Here, Custom LED and its counsel assert that they are adequate representatives because they have "no conflict" with the putative class members and because counsel have "extensive experience" in litigating class actions. Mot. at 15-16. Because there is nothing on the record indicating that Custom LED or his counsel have any conflicts of interest with the putative class members or that their interests in this case are insufficient to ensure vigorous representation of the class, this requirement is met.

### 2. Rule 23(b)(3)

This provision requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the

controversy." Fed. R. Civ. P. 23(b)(3).

Here, the parties have established superiority by arguing that a class action would achieve the resolution of the putative class members' claims at a lower cost and would reduce the likelihood of inconsistent determinations.

With respect to predominance, the parties assert that "the proposed settlement intrinsically presents predominantly common questions" because the operation of Featured Plus! was the same with respect to each class member. Mot. at 13-14. Though several individual questions exist, such as the amount of money that each class member spent on Featured Plus! listings, the Court is persuaded that the common questions pertaining to the functionality of Featured Plus! predominate over these individual inquiries. Id. at 22-25. Accordingly, this requirement also is satisfied.

### B. Fairness of the Settlement

In examining a pre-certification settlement agreement, a district court "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Hanlon, 150 F.3d at 1026 (citation omitted). A court may not "delete, modify or substitute certain provisions" of the settlement; rather "[t]he settlement must stand or fall in its entirety." Id.

Preliminary approval of a settlement and notice to the proposed class is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted).

Here, the proposed settlement has obvious deficiencies, appears to grant preferential treatment to segments of the class, and does not appear to fall within the range of possible approval. Accordingly, the parties' motion for approval of the settlement must be DENIED.

### 1. The Settlement Process

The stipulated settlement was reached after the parties participated in private mediation, which suggests that the settlement process was not collusive. Moreover, the parties assert that they "had the benefit of development of the facts, evidence, and legal issues relating to [Custom LED's] claims" prior to reaching the settlement. Mot. at 9. Finally, the parties contend that they have taken into account the "substantial expense" and time that litigating this action until final judgment would require, as well as "the difficulties and risks inherent in the trial" of this action. Id. These facts support the conclusion that the parties were sufficiently informed about the strengths and weaknesses of Custom LED's claims when negotiating the settlement.

### 2. Obvious Deficiencies

#### a. Scope of the Releases

The Court concludes that the scope of the release is overly broad, because it improperly releases any claim, known or unknown, "arising out of or relating in any way to Featured Plus!" and regardless of whether any such claim is based on the allegations in the complaint. See Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but *only where* the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (citations and internal quotation marks omitted) (emphasis added); cf. Collins v. Cargill Meat Solutions Corp., 274 F.R.D. 294, 303 (E.D. Cal. 2011) (holding that release of claims was not overly broad because the "released claims appropriately track the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants").

#### b. Notice

The proposed notice is deficient in four ways. First, the notice does not adequately inform the putative class members of the scope of the release. The notice states that

> In exchange for the payments above, the Settlement Class members will release all claims they have against eBay related to the allegations in the Lawsuit . . . The scope of the release is quite broad and is specified in the Settlement Agreement[.]

10

Mot., Ex. 1, Ex. C.

The scope of the release is much broader than what the notice discloses, as it includes all claims "related to" Featured Plus! regardless of whether or not they arise out of the allegations in the complaint, as discussed above. This deficiency may be cured by narrowing the scope of the release in a manner that tracks the breadth of the allegations in the complaint.

Second, the notice does not inform class members of the key difference between receiving payment via an account credit and receiving payment via check, which is that only the former is subject to reductions based on any amounts owed to eBay. Compare Mot., Ex. 1 ¶ 2.1(d) with Mot., Ex. 1 ¶ 2.1(e).

Third, the notice does not contain a range of the potential recovery that the class members can expect to receive under the settlement. Thus, it is not possible for a member of the proposed class to determine even approximately what percentage of the fees paid to eBay he or she will recover under the settlement.

Finally, and most importantly, the notice does not contain sufficient information as to how to receive payment, opt out of the settlement, or object to the settlement. The proposed notice merely instructs class members to "follow the specific details" listed in the notice website, a link to which is provided in the notice. See Mot., Ex. 1, Ex. C at 2. The notice itself must contain this crucial information.

        **c.**      **Credits as Default Method of Payment**

The parties have not established that the issuance of eBay account credits, which is the default method for distributing funds to class members with active eBay accounts, is fair to the class. Indeed, the parties do not explain how these credits, which can be applied only "pursuant to the normal terms and conditions that govern the use of credits by eBay users," are consistent with the "cash" settlement they describe in their motion. See Mot., Ex. 1 ¶ 2.1(d)(vi); Mot. at 2 ("If approved by the Court, the settlement, which provides for the establishment of a *cash* Settlement Fund of . . .") (emphasis added). They also do not explain why it would be fair to the class to reduce the credits by any amounts owed to eBay, even if such liabilities are unrelated to Featured Plus! fees. Mot., Ex. 1 ¶ 2.1(d)(vi) ("For Class Members who have an outstanding balance due to

11

1    eBay at the time of the issuance of the Credit, the Credit will be reduced by or applied to that
2    negative balance.").

### d.    Cy Pres Award

"A cy pres award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class." Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012) (citation and internal quotation marks omitted). "To ensure that the settlement retains some connection to the plaintiff class and the underlying claims . . . a cy pres award must qualify as the next best distribution to giving the funds directly to class members." Id. (citation and internal quotation marks omitted).

Here, the parties have not established that the National Cyber-Forensics & Training Alliance and the National Consumer Law Center have a nexus to the putative class members and their claims. Accordingly, the Court cannot conclude that the parties' proposed cy pres award complies with the Ninth Circuit's standard for such distributions.

### 3.    Preferential Treatment

#### a.    Bifurcation by Time Period

The Court is not convinced that the proposed scheme for distributing funds to the class members, which is bifurcated by time period, would not unfairly benefit some class members at the expense of others.

The parties assert that "most of the Featured Plus! fees were paid during [the first] period." Mot. at 20. Yet, under the terms of the settlement, only one-third of the Net Settlement Fund will be distributed to claims arising in that period. This uneven allocation appears to be the consequence of the parties' belief "that the claims during [the first] time period are much less significant than the claims [in the second period]." Id. The Court is not persuaded that this belief is correct given that the claims and defenses pertaining to each period, as described by the parties in their motion, appear to be substantially similar.

The claims in the first period are based on the theory that eBay's description of Featured Plus! was "misleading" and that eBay exclusively displayed Featured Plus! listings in search results sorted by Best Match even though it was supposed to display them in all search results,

regardless of how they were sorted. Id. at 19. eBay's defenses are that the functionality of Featured Plus! was "apparent" to users and that it always displayed Featured Plus! listings in the Featured Items section regardless of the manner in which search results were sorted. Id.

The claims in the second period are based on the theory that eBay's limitation on September 29, 2009, of Featured Plus! listings to Best Match searches conducted on eBay Motors was "misleading" in light of eBay's prior representations with respect to Feature Plus!, which "suggested that Featured Plus! would work for all searches no matter where they were initiated or whether the results were organized by price, time, or location." Id. eBay's defenses are that (1) the modifications to Featured Plus! did not create confusion, (2) sellers could easily discern how Featured Plus! worked post-modifications, and (3) eBay's internal data shows that the modifications had no effect on the usage of the Featured Plus! listings. Mot. at 20-21.

The bare summary of the claims and defenses with respect to each period that the parties provide in their motion, which is devoid of any analysis of the relevant evidence, is insufficient to justify bifurcating the distribution of the Net Settlement Fund such that claims in the second period will receive twice the payout as claims in the first period. Without an evaluation of the evidence material to the claims in each period, the Court cannot conclude that the proposed bifurcation is fair to the putative class members, especially those whose claims fall exclusively within the first period.

### b. Credits vs. Checks

The parties have not established that class members who receive checks would not receive special treatment vis-à-vis class members who receive account credits. Credits are subject to reductions based on *any* amounts owed to eBay, regardless of whether any such liabilities are related to Featured Plus!. See Mot., Ex. 1 ¶ 2.1(d)(vi) ("For Class Members who have an outstanding balance due to eBay at the time of the issuance of the Credit, the Credit will be reduced by or applied to that negative balance."). On the other hand, class members who receive checks will not have their distribution reduced by any amounts due to eBay. See Id. ¶ 2.1(d)(iii) ("The amount of a Settlement Check due to each Class Member will be determined by the Claims Administrator based on existing eBay records. The Claims Administrator shall not, however, be

1 required to determine any balance due to eBay or offset against the check amount any amounts
2 due to eBay.").

### 4. Range of Possible Approval

To determine whether a settlement "falls within the range of possible approval," a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." In re Tableware Antitrust Litig., 484 F. Supp. 2d at 1080.

Here, the parties have provided the Court with no information as to the class members' potential range of recovery. They also do not provide any data as to the number of claimants (as opposed to User IDs) in each period or the total amount of Featured Plus! fees paid in each period. Accordingly, the Court cannot evaluate the adequacy and fairness of the proposed settlement.

## IV. CONCLUSION

The parties' joint motion for preliminary approval of the proposed settlement is DENIED WITHOUT PREJUDICE. The parties may file a new motion for preliminary approval of the proposed settlement that cures each of the deficiencies identified in this Order within sixty days of the date this Order is filed.

**IT IS SO ORDERED**.

Dated: August 27, 2013

_____
JON S. TIGAR
United States District Judge