UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CUSTOM LED, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>EBAY, INC, et al.,<br><br>        Defendants. | Case No. 12-cv-00350-JST<br><br>**ORDER GRANTING JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; APPROVING NOTICE TO THE CLASS; SETTING DATES AND PROCEDURES FOR FINAL FAIRNESS HEARING**<br><br>Re: ECF No. 84 |

In this putative class action for breach of contract and related claims, the Court previously denied a motion for preliminary approval of a proposed settlement without prejudice on the grounds that it had obvious deficiencies, appeared to grant preferential treatment to segments of the class, and did not appear to fall within the range of possible approval. The parties have renewed their joint motion for preliminary approval after revising some portions of their proposed settlement. For the reasons set forth below, the renewed motion for preliminary approval is GRANTED, and the hearing and case management conference scheduled for November 20, 2013, are VACATED.

I.  **BACKGROUND**

    A.  **The Parties and Claims**

Custom LED filed this putative class action on January 23, 2012, asserting claims against eBay, Inc. ("eBay"), eBay Europe, and eBay International AG, for alleged breach of contract and fraud in connection with eBay's "Featured Plus!" listings.

Custom LED alleges that eBay is an "integrated" online marketplace that utilizes various "entry points," including www.ebay.com ("Core eBay"), www.motors.ebay.com ("eBay Motors"), and stores.ebay.com ("eBay Stores"). Compl. ¶ 6. All of these websites are interconnected such

that a search for an item listed on eBay Motors can be initiated from any of eBay's sites, including Core eBay and eBay Stores. Id. Because of the common web design, format, and interconnectedness of the eBay sites, buyers cannot readily discern whether they are on Core eBay, eBay Motors, or eBay Stores when they conduct searches for products. Id.

Before listing items for sale, sellers must agree to eBay's User Agreement. Id. ¶ 7. Sellers also must agree to eBay's fees schedules. Id. ¶ 8. eBay generally charges two types of fees to sellers: (1) an "insertion fee," which a seller pays when listing an item and generally does not exceed $1; and (2) a "final value fee," which the seller pays if the item is sold. eBay offers optional listing upgrades to sellers, which increase the listings' visibility and likelihood that items will be sold. Id. ¶ 12. One such upgrade is Featured Plus!, which is included in the eBay Motors fees schedule and costs as much as $39.95 per listing. Id. ¶ 10. The eBay Motors fees schedule describes Featured Plus! as:

> **Featured Plus!**: Your item appears in the **Featured Items** section at the top of the search results list page.

Id. & Ex. E (emphasis in original).

Custom LED alleges that this language constitutes a promise to display any listings for which sellers have paid "Features Plus!" fees in a "Featured Items section" at the top of any search list, regardless of the eBay site on which those searches were conducted and the way in which the search results were sorted. Id. ¶ 14. Custom LED further alleges that eBay did not abide by this promise, because the listings for which sellers paid Featured Plus! fees were not displayed in this manner. Id. Instead, a Features Plus! listing appeared at the top of the search results list only when three conditions were met: (1) the search was conducted on eBay Motors; (2) the search was limited to eBay Motors listings; and (3) the search results were sorted by "Best Match." Id.

Based on these allegations, Custom LED has asserted the following claims on behalf of a putative class: breach of contract; unfair competition in violation of California's Unfair Competition Law ("UCL"); violations of California's False Advertising Law ("FAL"); fraud and deceit; unjust enrichment; and declaratory judgment.

//

### B.    Procedural History

On May 24, 2012, the Court granted in part and denied in part eBay's motion to dismiss. ECF No. 41. The Court dismissed with prejudice Custom LED's claims for fraud and deceit, unjust enrichment, and declaratory judgment. Additionally, the Court dismissed with prejudice Custom LED's claims against eBay Europe and eBay International on the ground that no contract exists between Custom LED and these entities.

Accordingly, the only claims currently at issue are those for breach of contract, unfair competition in violation of the UCL, and false advertising in violation of the FAL.

### C.    Settlement Agreement

The parties reached a settlement after participating in a mediation conducted by the Honorable Ellen Sickles James on June 6, 2013. Verges Decl. ¶ 21.

The Court analyzed the terms of the original settlement agreement in its order of August 27, 2013, in which it denied without prejudice the parties' joint motion for preliminary approval of the settlement on the grounds that the agreement had obvious deficiencies, appeared to grant preferential treatment to segments of the class, and did not appear to fall within the range of possible approval. See ECF No. 75. Specifically, the Court identified problems with the scope of the release, the content of the notice, the use of credits as opposed to cash, the offsetting of credits based on amounts that class members owe to eBay, the allocation of different amounts of the Net Settlement Fund to certain time periods, and the disclosure of class members' potential range of recovery. Id.

In response to the Court's objections, the parties amended some portions of the settlement agreement, namely those pertaining to the scope of the release, and filed a renewed motion for preliminary approval that contains additional information about to the terms of the agreement. Mot., ECF No. 84 & Revised Settlement Agreement, ECF No. 84, Ex. 1.

Under the terms of the revised settlement agreement ("the revised agreement"), eBay has agreed to pay $4,750,000 to settle the claims at issue ("Gross Settlement Fund"). ECF No. 84, Ex. 1 ¶ 2.1. The following amounts will be subtracted from the Gross Settlement Fund: (1) $7,500 for Custom LED's "enhancement award;" (2) attorney's fees of "up to 25%" of the Gross Settlement

1  Fund, plus costs and expenses, which counsel for Custom LED estimates to be $1,212,500; and (3)
2  the costs of administering the settlement, which are not itemized in the proposed settlement but
3  counsel for Custom LED estimates to be "approximately $300,000." Id.; Verges Decl. at 9, n.1.
4  After subtracting these amounts, any remaining funds ("Net Settlement Fund"), which the
5  parties calculate to be approximately $3,230,000, will be distributed to the class, which the parties
6  define as:

> [A]ll natural persons and entities who are United States residents and who, from January 23, 2008 to the present listed items for sale on eBay's websites with the Featured Plus! upgrade, and incurred Featured Plus! Fees in connection with such listings.[1]

ECF No. 84, Ex. 1 ¶ 1.4.

Before distribution, the Net Settlement Fund first will be bifurcated by time period. One-third of the fund will be allocated to the time period ranging from January 23, 2008, to September 28, 2009 ("period 1"), and the remaining two-thirds will be allocated to the period ranging from September 29, 2009, to February 4, 2013 ("period 2"). Id. ¶ 2.1(d). The justification for this allocation is eBay's contention that Featured Plus! worked exactly as described prior to September 29, 2009, and that any alleged problems arose only after that date, when eBay made certain changes to the descriptions and functionality of Featured Plus!. ECF No. 84 at 4-5. Specifically, eBay has evidence showing that Featured Plus! listings were shown in Featured Items sections for all searches in period 1, regardless of where the buyer originated the search or how the search results were organized. ECF No. 84 at 7-8. No such evidence exists with respect to the listings in period 2. As such, the class members' claims in period 1 are significantly weaker than those in period 2.

Each class member will receive a distribution of the Net Settlement Fund based on the percentage of the disputed fees that she paid during each of the time periods relative to the total fees that all class members paid during each of the time periods. ECF No. 84, Ex. 1 ¶ 2.1(d).

---

[1] The location of the putative class members will be determined based on whether the primary contact information they gave to eBay is "an address in the United States." ECF No. 84, Ex. 1 ¶ 1.4.

1     The parties provide the following example to illustrate their distribution scheme: if all class
2     members incurred $10,000 in disputed fees in period 1 and $10,000 in period 2, and a class
3     member incurred $100 in disputed fees in period 1 and $200 in period 2, then that class member
4     would receive 1% of the Net Settlement Fund allocated to period 1 and 2% of the Net Settlement
5     Fund allocated to period 2. Id. The total distribution to this class member would equal the sum of
6     these two amounts.
7           The total amount of Featured Plus! fees collected by eBay over the entire class period was
8     approximately $[REDACTED] million. During period 1, class members spent approximately
9     $[REDACTED] on the Featured Plus! listing upgrade. Of these fees, over [REDACTED]% of the
10    listings (or approximately $[REDACTED] million of the Featured Plus! fees) resulted in a sale.
11    Thus, assuming a Net Settlement Fund of $3,230,000, a class member who paid for Featured Plus!
12    during this period would receive approximately 1.8% of what she paid for Featured Plus!. ECF
13    No. 84 at 11 n.1 & 17. During period 2, class members spent approximately $[REDACTED] on
14    the Featured Plus! listing upgrade. Over 27% of these listings (reflecting approximately
15    $[REDACTED] million in Featured Plus! fees) resulted in at least one sale. Assuming a Net
16    Settlement Fund of $3,230,000, a class member who paid for Featured Plus! during this period
17    would receive 16% of the total she paid for Featured Plus!. Id.
18          The default method for distributing funds to class members with active eBay accounts will
19    be to give them account credits. Credits will be reduced by any "outstanding amounts due to
20    eBay" and any "Disputed Fees incurred by Class Members for which Class Members already
21    received a refund, as determined by eBay's records." ECF No. 84, Ex. 1 ¶ 2.1(d). Class members
22    who receive credits "can apply for a refund" in accordance with eBay's refund policy. Id.
23    Additionally, any class member "with an Active eBay Account" who does not want to receive a
24    credit may choose to receive a check instead by providing notice to the claims administrator no
25    later than the deadline for filing objections. Id. ¶ 2.1(e). The amount of the check, which must
26    exceed $1, will be determined in accordance with the same formula used to calculate credits,
27    except that any check amount will not be reduced based on "any amounts due to eBay." Id.
28    //

The default method for distributing funds to class members with closed eBay accounts will be to send them checks to the name and address in eBay's records or to any other name or address that the class members provide to the claims administrator. Id. ¶ 2.1(f).

The amounts owed to the class members will be calculated by the claims administrator based on data provided by eBay. Id. ¶ 2.1(d). Class members will not have the right to contest the accuracy of the calculations performed by the claims administrator. Id. ¶ 2.1(g).

Any funds remaining in the Net Settlement fund after distribution will be allocated in equal amounts to the National Cyber-Forensics & Training Alliance ("NCFTA"), a nonprofit organization that protects consumers against cyber crime and fraud; and the National Consumer Law Center ("NCLC"), a nonprofit organization that focuses on consumer law issues. Id. ¶ 2.1(h).

The parties agree that the claims administrator will provide notice to the putative class members in the following four ways: (1) by setting up a website ("the notice website") within 30 days after the preliminary approval order is issued, which will contain the proposed class notice; (2) by email to the email address that eBay has for each class member; the email will contain the domain name of the notice website, the mailing address of the claims administrator, and the proposed class notice; (3) by first-class mail to the mailing address currently in eBay's records with respect to class members whose email notice is returned as undeliverable; and (4) by press release, which will contain a link to the notice website. Id. ¶ 3.3.

As part of the revised agreement, Custom LED and any putative class members who do not opt out of the action would release all claims, "known or unknown,"

> arising out of or relating in any way to any of the legal, factual, or other allegations made in the Action, or any legal theories that could have been raised based on the allegations of the Action.

Id. ¶ 4.2.

eBay retains the right to terminate the settlement agreement within seven days of the deadline for filing a motion for final approval of the settlement if more than 100 class members opt out of the action. Id. ¶ 3.7(c).

### D.     Jurisdiction

The Court has jurisdiction over this action under 28 U.S.C. § 1332(d).

6

## II. LEGAL STANDARD

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). The settlement of a certified class action must be fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). But, where the "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). In these situations, settlement approval "requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir. 2012) (citation and internal quotation marks omitted).

## III. DISCUSSION

### A. Class Certification

A district court may certify a class action under Federal Rule of Civil Procedure 23 if the parties seeking certification satisfy the four requirements identified in Rule 23(a) as well as one of the three subdivisions of Rule 23(b). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997).

When determining whether to certify a class for settlement purposes, a court must pay "heightened" attention to the requirements of Rule 23. Id. at 620. Indeed, "[s]uch attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Id. (citations omitted).

As discussed below, the parties show that Rule 23's requirements for certification of the putative class for settlement purposes are met.

#### 1. Rule 23(a)

Rule 23(a) contains four threshold requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Id. at 613.

##### a. Numerosity

The numerosity requirement is satisfied when a plaintiff shows that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

7

1     Here, the parties assert that "there are [REDACTED] unique user IDs in the Settlement

2 Class."   ECF No. 84 at 9-10.  The parties admit that the number of persons who fall within the

3 scope of the class definition may not be equivalent to the number of User IDs they have provided.

4 Nevertheless, the size of the putative class appears to be very large, such that joinder of all class

5 members would be impracticable.  Accordingly, this requirement is met.

### b.     Commonality

The commonality requirement is satisfied when a plaintiff shows that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality exists when the plaintiff's claims "depend upon a common contention" of "a nature that it is capable of classwide resolution," such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Dukes, 131 S. Ct. at 2551.

Here, Custom LED argues that commonality exists because the putative class members' claims arise out of "various web pages that describe the User Agreement, the Featured Plus! fees, the functionality of Featured Plus!, and the operation of the search feature, among other things." ECF No. 72 at 13.  The Court concludes that the existence of these common questions, whose answers will resolve issues central to the validity of Custom LED's claims, is sufficient to find commonality.

### c.     Typicality

Typicality exists if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal quotation marks omitted).

Here, Custom LED argues that typicality is satisfied because it and the putative class members were injured by the same course of conduct, namely eBay's search algorithm, which uniformly failed to display the Featured Plus! listings as advertised.  ECF No. 72 at 14.  The Court concludes that this is sufficient to find typicality.

### d. Adequacy of Representation

A plaintiff may bring claims on behalf of a class only if she "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998) (citation omitted).

Here, Custom LED and its counsel assert that they are adequate representatives because they have no conflict with the putative class members and because counsel have extensive experience in litigating class actions. ECF No. 72 at 15-16. Because there is nothing on the record indicating that Custom LED or its counsel have any conflicts of interest with the putative class members or that their interests in this case are insufficient to ensure vigorous representation of the class, this requirement is met.

### 2. Rule 23(b)(3)

This provision requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Here, the parties have established superiority by arguing that a class action would achieve the resolution of the putative class members' claims at a lower cost and would reduce the likelihood of inconsistent determinations.

With respect to predominance, the parties assert that the proposed settlement intrinsically presents predominantly common questions because the operation of Featured Plus! was the same with respect to each class member. ECF No. 72 at 13-14. The Court is persuaded that the common questions pertaining to the functionality of Featured Plus! predominate over individual inquiries. Id. at 22-25. Accordingly, this requirement also is satisfied.

//

//

### B.     Fairness of the Settlement

In examining a pre-certification settlement agreement, a district court "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Hanlon, 150 F.3d at 1026 (citation omitted). A court may not "delete, modify or substitute certain provisions" of the settlement; rather "[t]he settlement must stand or fall in its entirety." Id.

Preliminary approval of a settlement and notice to the proposed class is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted).

Here, the revised agreement complies with all of these requirements. Accordingly, the parties' motion for preliminary approval of the revised agreement is GRANTED.

#### 1.     The Settlement Process

The revised agreement was reached after the parties participated in private mediation, which suggests that the settlement process was not collusive. Moreover, the parties assert that the settlement is "the result of extensive arm's-length bargaining and was achieved only after extensive analysis, hard fought litigation, and difficult negotiations." ECF No. 84 at 23-24. Finally, the parties contend that they "have each considered the uncertainties of litigation; the benefits of the proposed settlement; the costs, risks, and delays associated with the continued prosecution of this complex litigation; and the likely appeals of any rulings in favor of either Plaintiff or eBay." ECF No. 84, Ex. 1 at 1. These facts support the conclusion that the parties were sufficiently informed about the strengths and weaknesses of Custom LED's claims when negotiating the settlement.

//

### 2. The Parties Have Cured Previously-Identified Deficiencies

#### a. Scope of the Release

In its prior order, the Court noted that the scope of the release in the original settlement agreement was overly broad because it improperly released any claim, known or unknown, "arising out of or relating in any way to Featured Plus!," regardless of whether any such claim is based on the allegations in the complaint. See ECF No. 75 at 10.

The parties revised the scope of the release so that the only claims that would be released are those that arise out of the allegations in the operative complaint. See ECF No. 84, Ex. 1 ¶ 4.2. As the claims to be released directly track the allegations in the complaint, the release is no longer improperly broad. See Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but *only where* the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (citations and internal quotation marks omitted) (emphasis added); cf. Collins v. Cargill Meat Solutions Corp., 274 F.R.D. 294, 303 (E.D. Cal. 2011) (holding that release of claims was not overly broad because the "released claims appropriately track the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants").

#### b. Notice

In its prior order, the Court found the proposed notice to be deficient because it did not (1) "adequately inform the putative class member of the scope of the release"; (2) "inform class members of the key difference between receiving payment via an account credit and receiving payment via check," as "only the former is subject to reductions based on any amounts owed to eBay"; (3) "contain a range of the potential recovery that the class members can expect to receive under the settlement"; or (4) "contain sufficient information as to how to receive payment, opt out of the settlement, or object to the settlement." See ECF No. 75 at 10-11.

The parties have cured each of these deficiencies. First, the parties have narrowed the scope of the release, as discussed above, and have included the entire text of the release in the

11

1  revised proposed notice. ECF No. 84, Ex. C at 2. Second, the revised proposed notice states
2  several times in prominent text that only credits will be reduced by amounts owed to eBay, while
3  checks will not. Id. at 1-3. Third, the revised proposed notice contains specific examples of the
4  potential recovery for class members in both dollar terms and percentage terms based on the
5  current estimate of the Net Settlement Fund, as well as an estimated range of recovery, which will
6  permit class members to estimate their recovery based on the amounts they spent on Featured
7  Plus! fees. Id. at 2. Finally, the revised proposed notice contains information on how to receive
8  payment, opt out of the settlement, and object to the settlement. Id. at 3.

### c. Credits as Default Method of Payment

The Court previously found that the parties had not established the fairness to the class of their proposed distribution scheme, which involves (1) the issuance of eBay account credits as opposed to cash as the default method for distributing funds to class members with active eBay accounts; (2) reducing credits by any amounts owed to eBay. ECF No. 75 at 11-12.

The parties justify the distribution scheme in their renewed motion by noting that the issuance of credits "requires no effort to deposit a check to use those funds for future eBay fees" and is therefore a more effective way of ensuring that class members receive an immediate economic benefit. ECF No. 84 at 26. The issuance of credits also is more cost-efficient and therefore beneficial to the class, as costs incurred in sending checks (approximately $1 per check) necessarily reduce the monies available for distribution to the class. Id. at 28.

The parties also note that, to the extent that any class member wishes to receive cash instead of a credit or wishes to avoid having her distribution amount reduced by an amount she owes to eBay, that class member has the option of requesting a check. Check distributions are not subject to reductions. Id. at 27-28. Importantly, the parties now describe the mechanism for, and consequences of, receiving checks in lieu of credits in the proposed notice. This description is in bolded and underlined text. See ECF No. 184, Ex. C at 1, 3.

### d. Cy Pres Award

"A cy pres award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff

class." Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012) (citation and internal quotation marks omitted). "To ensure that the settlement retains some connection to the plaintiff class and the underlying claims . . . a cy pres award must qualify as the next best distribution to giving the funds directly to class members." Id. (citation and internal quotation marks omitted).

The parties seek to split equally any remaining funds post-distribution between the National Cyber-Forensics & Training Alliance and the National Consumer Law Center. The Court previously found that the parties had failed to establish the requisite nexus between these organizations and the class members.

In their renewed motion, the parties argue that National Cyber-Forensics & Training Alliance has a nexus to the putative class members and their claims because the purpose of the organization is to prevent "harm to consumers from cyber crime and to educate and assist online marketplaces like eBay to make sure the internet is a safe and fair place to do business." ECF No. 84 at 31. The parties also posit that the National Consumer Law Center likewise has a nexus to the class members because it promotes "the goal of economic justice" with "an emphasis on consumer protection and advocacy, not just internet security in general." Id. The Court concludes that, in light of this information, the parties have satisfied their burden to show that the interests of these organizations are sufficiently tethered to the interests of the class members and that a cy pres award to these organizations would not be inappropriate.

### 3. Preferential Treatment

#### a. Bifurcation by Time Period

In its prior order, the Court stated that it was not convinced that the proposed scheme for distributing funds to the class members, which is bifurcated by time period, would not unfairly benefit some class members at the expense of others. This is because the parties previously failed to provide any analysis of the claims in each period.

In their renewed motion, the parties have provided the Court with additional information to justify their proposed bifurcation. Specifically, the parties explain that eBay has conclusive evidence showing that Featured Plus! worked precisely as advertised during period 1, while no such evidence exists with respect to the listings at issue during period 2. ECF No. 84 at 7-9. For

this reason, the class members' claims in period 1 are significantly weaker than their claims in period 2.

The Court concludes that the detailed explanation of the evidence material to the class members' claims in the two time periods at issue is sufficient to justify the proposed bifurcation of funds.

### b. Credits vs. Checks

The Court held in its prior order that the parties had not established that class members who receive checks would not receive special treatment vis-à-vis class members who receive account credits, as only credits, and not checks, are subject to reductions based on any amounts owed to eBay.

In their renewed motion, the parties explain that this distribution scheme would not grant preferential treatment to any segment of the class, because any class member may choose under the terms of the revised agreement to receive her distribution amount via check as opposed to a credit. Moreover, the revised notice now prominently informs class members of the check option, as well as of the fact that check distributions are not subject to reductions.

The Court finds that the universal availability of the check option and the prominent display of information pertaining to that option is sufficient to ensure that certain segments of the class will not benefit more from the settlement than others.

### 4. Range of Possible Approval

To determine whether a settlement "falls within the range of possible approval," a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." In re Tableware Antitrust Litig., 484 F. Supp. 2d at 1080.

In its prior order, the Court noted that the parties had failed to provide information as to the class members' potential range of recovery. The parties have cured this deficiency in their renewed motion by providing detailed data on the listing fees at issue during each of the two time periods, as well as calculations of the potential range of the class members' recovery under the terms of the revised agreement. See ECF No. 84 at 17; see also Section I.C. supra. The Court

concludes that this information establishes that the revised agreement falls within the range of possible approval.

## IV.     CONCLUSION

The parties' joint motion for preliminary approval of the revised settlement is GRANTED.

1. The class is certified for settlement purposes only in accordance with the class definition described above.

2. The Court appoints the law firm of Figari & Davenport, L.L.P as counsel for the settlement class for settlement purposes only and authorizes it to retain a class administrator in its discretion.

3. The Court approves the parties' proposed notice.  The notice scheme described in the revised agreement shall commence within 30 days of the date this order is filed. Counsel for the settlement class shall file a sworn statement within 45 days of the date this order is filed attesting to their compliance with this paragraph.

4. Counsel for the settlement class shall file an application for an award of attorney's fees and costs, and an incentive award for Custom LED, within 45 days of the date this order is filed.

5. The deadline for filing claims, objections, or requests for exclusion from the settlement class shall be 120 days of the date this order is filed, and not 81 days as the parties request.  The proposed notice materials shall be edited accordingly.

6. Counsel for the settlement class shall file a motion for final approval of the revised agreement within 145 days of the date this order is filed.  The deadline for responding to objections or to any opposition briefs filed by objectors shall be 166 days of the date this order is filed.

7. A final fairness hearing shall be held on Wednesday, June 18, 2014, at 3:00 p.m. in Courtroom 9, 19th Floor, at the United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, CA 94102.

**IT IS SO ORDERED**.

Dated: November 20, 2013

_____
JON S. TIGAR
United States District Judge