UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CUSTOM LED, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>EBAY, INC, et al.,<br><br>    Defendants. | Case No. 12-cv-00350-JST<br><br>**ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING MOTION FOR ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD**<br><br>Re: ECF Nos. 90, 95 |

Two motions are pending in this putative class action for breach of contract and related claims. First, Plaintiff Custom LED and Defendant eBay Inc. move jointly for an order granting final approval to the parties' settlement agreement. Second, Custom LED moves for an award of attorneys' fees, litigation costs, and a service enhancement award to the class representative. The Court held a final fairness hearing on June 18, 2014, at 3:00 p.m. For the reasons set forth below, both motions are GRANTED.

## I. BACKGROUND

A detailed description of the facts and claims at issue in this action, as well as this action's procedural history, can be found in the court's order of November 20, 2013. ECF No. 87.

On November 20, 2013, the court (1) granted preliminary approval to the parties' proposed settlement agreement and conditionally certified the putative class for settlement purposes only; (2) appointed the law firm of Figari & Davenport, L.L.P, as counsel for the settlement class for settlement purposes only and authorized it to retain a class administrator in its discretion; (3) approved the parties' proposed notice; (4) set the deadline for filing objections and requests for exclusion within 120 days; and (5) set the date of the fairness hearing to June 18, 2013, at 3:00 p.m.

## A. Settlement Agreement

Under the terms of the preliminarily approved settlement agreement ("the revised agreement"), eBay has agreed to pay $4,750,000 to settle the claims at issue ("Gross Settlement Fund"). ECF No. 84, Ex. 1 ¶ 2.1. The following amounts will be subtracted from the Gross Settlement Fund: (1) $7,500 for Custom LED's "enhancement award;" (2) attorney's fees of "up to 25%" of the Gross Settlement Fund, plus costs and expenses, which counsel for Custom LED estimates to be $1,212,500; and (3) the costs of administering the settlement, which are not itemized in the proposed settlement but counsel for Custom LED estimates to be "approximately $300,000." Id.; Verges Decl. at 9, n.1.

After subtracting these amounts, any remaining funds ("Net Settlement Fund"), which the parties calculate to be approximately $3,230,000, will be distributed to the class, which the parties define as:

> [A]ll natural persons and entities who are United States residents and who, from January 23, 2008 to the present listed items for sale on eBay's websites with the Featured Plus! upgrade, and incurred Featured Plus! Fees in connection with such listings.[1]

ECF No. 84, Ex. 1 ¶ 1.4.

Before distribution, the Net Settlement Fund first will be bifurcated by time period. One-third of the fund will be allocated to the time period ranging from January 23, 2008, to September 28, 2009 ("period 1"), and the remaining two-thirds will be allocated to the period ranging from September 29, 2009, to February 4, 2013 ("period 2"). Id. ¶ 2.1(d). The justification for this allocation is eBay's contention that Featured Plus! worked exactly as described prior to September 29, 2009, and that any alleged problems arose only after that date, when eBay made certain changes to the descriptions and functionality of Featured Plus!. ECF No. 84 at 4-5. Specifically, eBay has evidence showing that Featured Plus! listings were shown in Featured Items sections for all searches in period 1, regardless of where the buyer originated the search or how the search

---

[1] The location of the putative class members was to be determined based on whether the primary contact information they gave to eBay is "an address in the United States." ECF No. 84, Ex. 1 ¶ 1.4.

2

results were organized. ECF No. 84 at 7-8. No such evidence exists with respect to the listings in period 2. As such, the class members' claims in period 1 are significantly weaker than those in period 2.

Each class member will receive a distribution of the Net Settlement Fund based on the percentage of the disputed fees that she paid during each of the time periods relative to the total fees that all class members paid during each of the time periods. ECF No. 84, Ex. 1 ¶ 2.1(d). The parties provide the following example to illustrate their distribution scheme: if all class members incurred $10,000 in disputed fees in period 1 and $10,000 in period 2, and a class member incurred $100 in disputed fees in period 1 and $200 in period 2, then that class member would receive 1% of the Net Settlement Fund allocated to period 1 and 2% of the Net Settlement Fund allocated to period 2. Id. The total distribution to this class member would equal the sum of these two amounts.

The total amount of Featured Plus! fees collected by eBay over the entire class period was approximately $74 million. During period 1, class members spent approximately $60,806,349.71 on the Featured Plus! listing upgrade. Of these fees, over 54% of the listings (or approximately $37 million of the Featured Plus! fees) resulted in a sale. Thus, assuming a Net Settlement Fund of $3,230,000, a class member who paid for Featured Plus! during this period would receive approximately 1.8% of what she paid for Featured Plus!. ECF No. 84 at 11 n.1 & 17. During period 2, class members spent approximately $13,466,404.11 on the Featured Plus! listing upgrade. Over 27% of these listings (reflecting approximately $3.7 million in Featured Plus! fees) resulted in at least one sale. Assuming a Net Settlement Fund of $3,230,000, a class member who paid for Featured Plus! during this period would receive 16% of the total she paid for Featured Plus!. Id.

The default method for distributing funds to class members with active eBay accounts will be to give them account credits. Credits will be reduced by any "outstanding amounts due to eBay" and any "Disputed Fees incurred by Class Members for which Class Members already received a refund, as determined by eBay's records." ECF No. 84, Ex. 1 ¶ 2.1(d). Class members who receive credits "can apply for a refund" in accordance with eBay's refund policy. Id.

3

Additionally, any class member "with an Active eBay Account" who does not want to receive a credit may choose to receive a check instead by providing notice to the claims administrator no later than the deadline for filing objections. Id. ¶ 2.1(e). The amount of the check, which must exceed $1, will be determined in accordance with the same formula used to calculate credits, except that any check amount will not be reduced based on "any amounts due to eBay." Id.

The default method for distributing funds to class members with closed eBay accounts will be to send them checks to the name and address in eBay's records or to any other name or address that the class members provide to the claims administrator. Id. ¶ 2.1(f).

The amounts owed to the class members will be calculated by the claims administrator based on data provided by eBay. Id. ¶ 2.1(d). Class members will not have the right to contest the accuracy of the calculations performed by the claims administrator. Id. ¶ 2.1(g).

Any funds remaining in the Net Settlement fund after distribution will be allocated in equal amounts to the National Cyber-Forensics & Training Alliance ("NCFTA"), a nonprofit organization that protects consumers against cyber crime and fraud; and the National Consumer Law Center ("NCLC"), a nonprofit organization that focuses on consumer law issues ("cy pres award"). Id. ¶ 2.1(h).

The parties agree that the claims administrator will provide notice to the putative class members in the following four ways: (1) by setting up a website ("the notice website") within 30 days after the preliminary approval order is issued, which will contain the proposed class notice; (2) by email to the email address that eBay has for each class member; the email will contain the domain name of the notice website, the mailing address of the claims administrator, and the proposed class notice; (3) by first-class mail to the mailing address currently in eBay's records with respect to class members whose email notice is returned as undeliverable; and (4) by press release, which will contain a link to the notice website. Id. ¶ 3.3.

//
//
//
//

4

As part of the revised agreement, Custom LED and any putative class members who do not opt out of the action would release all claims, "known or unknown,"

> arising out of or relating in any way to any of the legal, factual, or other allegations made in the Action, or any legal theories that could have been raised based on the allegations of the Action.

Id. ¶ 4.2.

eBay retains the right to terminate the settlement agreement within seven days of the deadline for filing a motion for final approval of the settlement if more than 100 class members opt out of the action. Id. ¶ 3.7(c).

### B. Modification to Settlement Agreement

Custom LED seeks to modify the distribution plan previously described in the parties' settlement agreement in the following manner: funds that would have been distributed to the cy pres fund, namely money that should have been distributed to class members whose contact information is unavailable to eBay, will now be distributed pro rata to class members who have not opted out and whose contact information is available to eBay. Joint Mot. at 15. The cy pres fund will now receive funds coming from uncashed checks only. This modification, which eBay does not oppose, will have the effect of increasing the recovery of class members who do not opt out and whose contact information is available, and of reducing the amount of money going to the cy pres fund.

### C. Jurisdiction

The Court has jurisdiction over this action under 28 U.S.C. § 1332(d).

## II. MOTION FOR FINAL APPROVAL OF THE CLASS SETTLEMENT

### A. Legal Standard

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. Pro. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1025 (9th Cir. 1998). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Id. at 1026. "Assessing a settlement proposal requires the district court to balance a number of factors: the

strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." Id.

**B. Analysis**

As will be discussed below, the court concludes that the proposed settlement is fair, adequate, and reasonable. As such, the court GRANTS the parties' motion for final approval of the proposed settlement.

**1. Adequacy of Notice**

"The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

Here, the court previously approved the parties' proposed method for providing notice to the class. ECF No. 87. The parties have shown that the class administrator has carried out the notice plan approved by the court by preparing the class list, emailing notice to the class members, and mailing notice to those class members who could not be reached via email. Dahl Decl. ¶¶ 12, 16, 18, ECF No. 95-5. Only 2.56% of direct notices were returned as undeliverable. Id. The class administrator issued two press releases, set up a toll-free number, and made the class notice available at the class website in order to reach the class members who could not be contacted directly. Id. ¶¶ 21, 26. In light of the foregoing, the court finds that the parties have sufficiently provided the best practicable notice to the settlement class members. See Lundell v. Dell, Inc., Case No. 05-3970 JWRS, 2006 WL 3507938, at *1 (N.D. Cal. Dec. 5, 2006) (holding that notice sent via email and first class mail constituted the "best practicable notice" and satisfied due process requirements).

**2. Fairness, Adequacy, and Reasonableness of Settlement**

**a. Strength of Plaintiff's Case**

Approval of a class settlement is appropriate when "there are significant barriers plaintiffs

6

must overcome in making their case." Chun-Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

Here, Custom LED acknowledges that, if the settlement is not approved, it will encounter significant obstacles in establishing its claims in light of the uncertainties surrounding class certification, proof of damages, and eBay's numerous affirmative defenses. The court finds that these acknowledged weaknesses weigh in favor of approving the settlement. See Moore v. Verizon Communications Inc., C 09-1823 SBA, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) (finding that the strength of plaintiff's case favored settlement because plaintiff admitted that it would face hurdles in establishing class certification, liability, and damages).

### b. The Risk of Continued Litigation

Difficulties and risks in litigating weigh in favor of approving a class settlement. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009).

Here, this factor supports granting final approval to the parties' settlement because, absent the settlement, Custom LED would have faced a significant risk of recovering nothing after a lengthy and costly litigation, as eBay "most certainly would have opposed class certification, filed an interlocutory appeal of any adverse class certification decision, and then appealed any adverse verdict at trial." ECF No. 95, Ex. 2 at 11.

### c. Risk of Maintaining Class Action Status

As noted above, both parties recognize that eBay will actively oppose certification of the class if the settlement is not approved. As such, the Court finds that the potential difficulties associated with obtaining class certification weigh in favor of approving the settlement. See McKee Foods Corp., 716 F. Supp. 2d at 851 (holding that this factor supports approving a settlement when both parties acknowledge the possibility of decertification).

### d. Amount of Settlement

The court previously concluded that the amount of the settlement is within the range of approval. ECF No. 87 at 14-15. Assuming a Net Settlement Fund of $3,230,000, a class member who paid for Featured Plus! would receive approximately 1.8% of what she paid for Featured Plus! fees during period 1 and 16% for what she paid for in Period 2. ECF No. 84 at 11 n.1.

7

Although this amount is not the maximum amount the class members could have recovered if they had prevailed at trial, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." In re Omnivision Technologies, Inc., 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008). Indeed, courts have held that a recovery of only 3% of the maximum potential recovery is fair and reasonable when the plaintiffs face a real possibility of recovering nothing absent the settlement. Id. In light of the foregoing, the court finds that the amount of the settlement is fair and reasonable.

Additionally, the court finds that the proposed modification to the settlement, which will result in an additional pro rata distribution of unclaimed funds to non-opt-out class members whose contact information is available to eBay, also is fair and reasonable.

### e. Extent of Discovery

"In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted).

Here, the parties reviewed thousands of documents, conducted depositions, and consulted with independent experts prior to negotiating the settlement. ECF No. 85 at 2. Accordingly, the Court is persuaded that counsel conducted sufficient discovery to make an informed decision about whether the settlement of this action was appropriate. See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (finding that the parties' significant preliminary investigation and work with relevant experts throughout the case demonstrated that the parties were sufficiently informed about the case prior to settling the action).

### f. Experience of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." In re Omnivision Technologies, Inc., 559 F. Supp. 2d at 1043 (citation omitted).

Here, class counsel have demonstrated that they are sufficiently informed about the current dispute and that they have more than 20 years of experience defending and prosecuting class actions. See ECF No. 85 at 2; ECF 95 at 13. Additionally, no party has provided the court with

8

any evidence contradicting the notion that class counsel's recommendations are reasonable. In light of the foregoing, class counsel's "unequivocal" support for the settlement weighs in favor of approving the settlement. See, e.g., In re Omnivision Technologies, Inc., 559 F. Supp. 2d at 1043 (finding class counsel's recommendation in favor of settlement to be presumptively reasonable because they demonstrated knowledge about the case and securities litigation in general).

### g. Reaction of the Class

The positive reaction of the class members to a settlement weighs in favor of settlement approval. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." Id. (citation omitted).

In this case, of over 25,000 class members, only 10 (.004%) have opted out of the settlement and only one individual has filed objections. ECF No. 95 at 14. Given the class members' overwhelmingly positive reaction, the court finds that the settlement is favorable to the class members. See, e.g., McKee Foods Corp., 716 F. Supp. 2d at 852 (finding that 4.86% opt-out rate strongly supported approval); Churchill Village LLC v. Gen. Elec., 361 F.3d 566, 577 (9th Cir. 2004) (holding that approval of a settlement that received 45 objections (.05%) and 500 opt-outs (.56%) out of 90,000 class members was proper).

The court now turns to the merits of the single objection that was filed in this case.

### 1. James B. Hicks Lacks Standing to Object

"[E]ach objection must be made a part of the record; those members raising substantial objections must be afforded an opportunity to be heard with the assistance of privately retained counsel if so desired, and a reasoned response by the court on the record; and objections without substance and which are frivolous require only a statement on the record of the reasons for so considering the objection." Officers for Justice, 688 F.2d at 624 (citation omitted).

Here, James B. Hicks objected to the settlement, gave notice to appear, and provided proof of service on all parties. See ECF No. 99, Ex. A at 1, 8-9. Hicks asserts that he has standing to object because he is a class member and did not opt-out of the settlement. Hicks Objection at 1.

Custom LED requests that the court overrule Hicks' objection on the ground that Hicks

lacks standing to object because he has provided no evidence to demonstrate that he is an aggrieved class member. Custom LED notes that Hicks has not updated his contact information so that settlement funds can be disbursed to him if the settlement is approved, and that Hicks did not file his objection by the deadline set by the court. See ECF No. 99 at 5. Custom LED also notes that Hicks has objected to other class action settlements in the past, that he has been sanctioned by the California Bar, and that he has a history of being sanctioned by the federal courts, including the Ninth Circuit. Id. at 3 & Ex. B, C, D.

After reviewing all relevant filings, the court concludes that Hicks lacks standing to object to the settlement because he has not demonstrated that he is an aggrieved class member. One must be an aggrieved class member to object to a class action settlement; to be an aggrieved class member, an individual must fall within the class definition and also must have been injured by the defendant's conduct. See Wolford v. Gaekle (In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.), 33 F.3d 29, 30 (9th Cir. 1994) ("Simply being a member of a class is not enough to establish standing. One must be an aggrieved class member."); In re Omnivision Technologies, 559 F. Supp. 2d at 1044 (holding that a class member lacked standing to object to a settlement because he did not show that the defendant caused him any injury). Here, the class administrator did not send notice to anyone with the name, mailing address, or email address that Hicks has provided. Dahl Decl. ¶ 4, ECF No. 99-6. Moreover, eBay's data reveals that Hicks' name, email address, and mailing address were not associated with any eBay account falling within the class definition.[2] Verges Decl. ¶ 6, ECF No. 99. In addition, no one with Hicks' name, email, or mailing address updated his contact info on the class website. Id. Finally, when class counsel telephoned Hicks to obtain the information associated with his eBay account, he refused to provide the information on the ground that it is private. Id. ¶ 3. In sum, because Hicks has failed to show that he is an aggrieved class member, his objection must be overruled for lack of standing.

Hicks also lacks standing because he failed to follow the procedures set forth in the class notice. See San Francisco NAACP v. San Francisco Unified Sch. Dist., 59 F. Supp. 2d 1021,

---

[2] Two accounts associated with Jim Hicks did not incur any relevant Featured Plus! Fees.

10

1028 (N.D. Cal. 1999) (providing that one must comply with the procedures required by the notice in order to have standing to object to a settlement). The class notice approved by the court provides that a class member must file objections "with the Court by March 20, 2014. You cannot do this online on this web site nor can you simply mail something to the Settlement Class Administrator." ECF 95, Ex. 1 at 5. Here, Hicks never filed the objection and notice to appear with the court, and the objection that he mailed to Custom LED's counsel was late.

### 2. Hicks' Objections Lack Merit

#### i. Objection to Distribution Plan

Hicks' objects to the settlement's distribution plan, which "caps the total amount of settlement monies to be paid to two separate groups of class members." Hicks Objection at 1. Hicks argues that this plan must be rejected for the following reasons: (1) the division of the common fund between period 1 and period 2 is arbitrary and unfair; (2) this arbitrary division creates a conflict of interest for class counsel because both groups of class members are competing for the same money in the settlement fund; and (3) the conflict of interest is exacerbated by the cy pres award, which unfairly distributes "any leftover" money "to two non-profit organizations to the exclusion of unpaid or underpaid class members." Id. at 1-3.

Custom LED filed a response to this objection. It argues that the allocation plan is not arbitrary because the different recoveries it provides are based on the relative strength of the class members' claims. For this reason, Custom LED argues that the allocation plan does not create a conflict of interest. Id. at 7-9. Lastly, Custom LED contends that Hicks misunderstands the mechanism for the cy pres award. Custom LED notes that, contrary to Hicks' assertions, only the funds that are left over from class members not cashing their settlement checks will be provided to the cy pres organizations, and doing so is appropriate because distributing those small amounts to the class members pro rata would be financially inefficient. Id. at 9-11.

The court already determined that the allocation plan proposed by the parties is reasonable, fair, and adequate. ECF No. 87 at 13-14. Though the court was initially concerned that the proposed scheme would unfairly benefit some class members at the expense of the others, the parties subsequently provided the court with additional information as to why the scheme is

11

justified in light of the evidence material to the class members' claims. ECF No. 89 at 13-14; ECF No. 84 at 7-9. Additionally, the court agrees with Custom LED that Hicks has misconstrued the cy pres distribution scheme. Under the parties' modification to the settlement, the distribution to the class members will increase and the cy pres award will decrease; indeed, the latter will be limited to funds resulting from uncashed checks. The court has already concluded that this modification is fair and reasonable. Because Hicks' objection does not contain information or analysis that the court has not already considered, the court finds that the objection to the proposed allocation plan is unmeritorious and must be overruled. See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 460-61 (9th Cir. 2000) (approving a distribution plan that was bifurcated by time on the ground that the parties showed that the strength of the class members' claims changed at an identifiable date).

### ii. Objection to Attorney's Fees Award

Hicks objects to class counsel's request for 25% of the settlement fund in attorney's fees, arguing that this percentage should not be determined based on the entire fund. Hicks Objection at 3-4.

Custom LED responds that 25% is the benchmark fee in the Ninth Circuit and that the only Ninth Circuit case on which Hicks relies, In re Bluetooth Headset Products Liab. Litig., 654 F.3d 935 (9th Cir. 2011), is distinguishable, because the attorney's fee award in that case constituted 83.2% of the settlement fund. The Response at 11-12.

As will be discussed in more detail below, the requested attorney's fees award is reasonable. As such, Hicks' objection to this award is overruled.

### iii. Objection to Adequacy of Notice

Hicks objects to the class notice because the settlement agreement available on the class website did not include the settlement's exhibits.[3] Hicks argues that this omission is "another due process violation." Hicks Objection at 6.

Custom LED responds that the exhibits were unnecessary and duplicative since their

---

[3] These exhibits are the complete notice, the order granting preliminary approval to the settlement, and the summary notice.

contents were otherwise available to class members. The complete notice exhibit constituted the website's actual content. The exhibit containing the order granting preliminary approval to the settlement was available via the website's document page. Lastly, a copy of the summary notice exhibit was sent to class members and a summary of it was provided on the website. Custom LED's Response at 13-14.

As discussed above, the court has concluded that the notice that the parties provided to the class members was sufficient to satisfy all due process requirements. The court finds that the failure to include the settlement's exhibits on the website in the manner that Hicks envisioned does not render the notice inadequate. Therefore, Hicks' objection is overruled.

### iv. Objection to Scope of Release

Hicks objects to the settlement's release provision on the ground that it is too broad and thus violates the class members' constitutional rights. Hicks Objection at 5.

Custom LED responds that the scope of the release is similar to those approved in other class actions.

The court concludes that the release is not overly broad because the only claims that it affects are those that arise out of the allegations in the operative complaint. See ECF No. 84, Ex. 1 ¶ 4.2; see Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but *only where* the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (citations and internal quotation marks omitted) (emphasis added); Collins v. Cargill Meat Solutions Corp., 274 F.R.D. 294, 303 (E.D. Cal. 2011) (holding that release of claims was not overly broad because the "released claims appropriately track the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants"). Thus, Hicks' objection to the release is overruled.

//

//

//

13

## III. ATTORNEY'S FEES

### A. Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." In re Bluetooth Headset Products Liab. Litig., 654 F.3d 935, 942 (9th Cir. 2011).

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." Id.

"Because the benefit to the class is easily quantified in common-fund settlements," courts can "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." Id. "Applying this calculation method, courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." Id. (citation omitted). In considering whether to adjust the presumptive 25% award upward, the Ninth Circuit has approved of district courts taking into account "[e]xceptional results," the "risk" of non-recovery assumed by counsel, any "benefits beyond the case settlement fund" that counsel achieved for the class, counsel's "reasonable expectations, . . . based on the circumstances of the case and the range of fee awards out of common funds of comparable size," and any unusual burdens borne by counsel. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002).

"Even though a district court has discretion to choose how it calculates fees . . . it 'abuses that 'discretion when it uses a mechanical or formulaic approach that results in an unreasonable reward.'" In re Bluetooth, 654 F.3d at 944 (citation omitted). "Thus, even though the lodestar method may be a perfectly appropriate method of fee calculation," the Ninth Circuit has "also encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method." Id.

//

### B. Analysis

The settlement fund totals $4,750,000. Class counsel seek the standard 25% benchmark in attorney's fees, which totals $1,187,500. ECF No. 90 at 2. A cross-check of that amount with the lodestar reveals that the lodestar totals $615,513. Verges Decl., ECF No. 91, Ex. B at 1. The amount that class counsel seek, or 25% of the common fund, constitutes a 1.94 multiplier of the lodestar. Because courts routinely approve attorney's fees awards with multipliers ranging between 1 and 4 of the lodestar, the court finds that the award that class counsel seek here is reasonable. See In re Omnivision Technologies, Inc., 559 F. Supp. 2d at 1048 (noting that courts have approved multipliers ranging between 1 and 4); see also Vizcaino v. Microsoft Corp., 290 F.3d at 1051 n.6 (noting that the majority of class action settlements approved had fees multipliers that ranged between 1.5 and 3). Accordingly, class counsel's motion for $1,187,500 in attorney's fees is GRANTED.

## IV. EXPENSES

### A. Legal Standard

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted).

### B. Analysis

A review of the records submitted by class counsel shows that their expenses total $21,615.23 as of December 2013. Verges Decl. ¶ 20, ECF No. 91, Ex. B. Class Counsel that expenses as of the date of the fairness hearing will be approximately $26,600. Verges Decl. ¶ 20, Ex. B. These expenses were incurred in connection with computer research, travel to hearings, telephone charges, and costs for copying and printing. Because these expenses are of the type normally charged to a paying client, class counsel's motion for $26,600 in costs is GRANTED.

## V. INCENTIVE AWARDS

### A. Legal Standard

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir.

2003). "Incentive awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 958-59 (9th Cir. 2009) (internal citation omitted). "The district court must evaluate their awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" Staton, 327 F.3d at 977 (citation omitted). "[D]istrict courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." Radcliffe v. Experian Information Solutions, Inc., 715 F.3d 1157, 1165 (9th Cir. 2013).

**B. Analysis**

The court concludes that an incentive award to the named plaintiff of 7,500 is reasonable. Custom LED spent a substantial amount of time participating in this litigation and its efforts resulted in a significant recovery for the class members. See Verges Decl. ¶ 18. Accordingly, the enhancement award requested is appropriate to compensate Custom LED for the time and effort it spent in connection with this litigation and the risks it took on behalf of its fellow class members.

**VI. CONCLUSION**

For the foregoing reasons, the Court hereby ORDERS as follows:

1. The court certifies the class for settlement purposes only.
2. The court grants final approval to the parties' proposed settlement, which is fair, adequate, and reasonable.
3. The court approves an incentive award of $7,500 to Custom LED.
4. The court approves an award to class counsel of $1,187,500 in attorney's fees and $26,600 in expenses.
5. The court approves the payment of $250,000 to the claims administrator.

/ / /

/ / /

6. The ten class members who requested to opt out of the settlement class are excluded from the class.

**IT IS SO ORDERED.**

Dated: June 24, 2014

_____
JON S. TIGAR
United States District Judge